1  MARTIN A. ELIOPULOS, ESQ. (Bar No. 149299)
   HIGGS, FLETCHER & MACK LLP
2  401 West "A" Street, Suite 2600
   San Diego, CA  92101-7913
3  TEL:  619.236.1551
   FAX:  619.696.1410
4
   Attorneys for Debtor-in-Possession
5  TYCOON DEVELOPMENT CORPORATION
6
7
8              UNITED STATES BANKRUPTCY COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10 In re:                          │ CASE NO. 10-14277-MM11
11                                 │ NOTICE OF *EMERGENCY* MOTION
                                   │ AND *EMERGENCY* MOTION FOR AN
12 TYCOON DEVELOPMENT              │ ORDER:
   CORPORATION,                    │
13             Debtor-in-Possession.│ (1)  SETTING HEARING ON
                                   │ EMERGENCY MOTION; AND
14                                 │
15                                 │ (2)  AUTHORIZING THE USE OF CASH
                                   │ COLLATERAL REGARDING 500 LA
                                   │ TERRAZA BLVD. PROPERTY;
16                                 │
                                   │ MEMORANDUM OF POINTS AND
17                                 │ AUTHORITIES AND DECLARATION
                                   │ OF SOLOMON LEVY IN SUPPORT
18                                 │ THEREOF
19                                 │ DATE:      August 23, 2010
                                   │ TIME:      10:00 a.m.
20                                 │ DEP'T:     1
                                   │ JUDGE:     Hon. Margaret Mann
21
22                     __NOTICE__
23     TO THE HONORABLE MARGARET MANN, JUDGE OF THE UNITED STATES
24 BANKRUPTCY COURT, SECURED CREDITORS, THE TWENTY LARGEST
25 UNSECURED CREDITORS AND THE UNITED STATES TRUSTEE:
26 ///
27 ///
28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1   **PLEASE TAKE NOTICE** that TYCOON DEVELOPMENT CORPORATION

2   ("Debtor") debtor and debtor-in-possession herein, hereby moves this Court for an Order:

3   (i) setting a hearing on *Emergency* Motion; and (ii) authorizing the use of cash collateral seeking

4   relief pursuant to 11 U.S.C. §363 (the "Motion"), to use the cash collateral consisting of rents and

5   any other income derived from the property located at 500 La Terraza Blvd., Escondido CA

6   92025 (the "500 La Terraza Property").

7   **PLEASE TAKE FURTHER NOTICE THAT THE ABOVE LISTED MOTION**

8   **HAS BEEN FILED IN ACCORDANCE WITH THE APPENDIX D1 OF THE LOCAL**

9   **BANKRUPTCY RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR**

10  **THE SOUTHERN DISTRICT OF CALIFORNIA ("LOCAL BANKRUPTCY RULES").**

11  **AS REQUIRED BY APPENDIX D1 OF THE LOCAL BANKRUPTCY RULES**

12  **("GUIDELINES FOR FIRST DAY MOTIONS"), ANY PARTY IN INTEREST THAT**

13  **OPPOSES THE MOTION SHALL IMMEDIATELY NOTIFY THE JUDGE'S LAW**

14  **CLERK OF ITS POSITION BY TELEPHONE AT (619)557-6692. NO WRITTEN**

15  **OPPOSITION SHALL BE FILED TO THE MOTION UNLESS THE COURT**

16  **OTHERWISE DIRECTS.  PLEASE NOTE THAT THE FAILURE TO NOTIFY THE**

17  **COURT OF OPPOSITION TO THE MOTION MAY BE DEEMED TO BE CONSENT TO**

18  **THE RELIEF REQUESTED, AND THE RELIEF MAY BE GRANTED WITHOUT**

19  **FURTHER NOTICE OF HEARING.**

20  **PLEASE TAKE FURTHER NOTICE THAT THE COURT HAS TENTATIVELY**

21  **SET A HEARING FOR DEBTOR'S EMERGENCY MOTION FOR THE DATE AND**

22  **TIME SET ABOVE.  DEBTOR HAS SUBMITTED A PROPOSED ORDER TO THE**

23  **COURT REGARDING DEADLINES FOR SERVICE, OPPOSING AND REPLYING**

24  **AND, IF ENTERED, WILL BE SERVED ALONG WITH THIS PLEADING.**

25  ///

26  ///

27  ///

28  ///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

2

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1      *The request is for use of cash collateral retroactive to the Petition Date through a hearing*

2  *to be set by the Bankruptcy Court on further interim and/or final authorization to use cash*

3  *collateral.*

4

5

  DATED:  August 13, 2010            HIGGS, FLETCHER & MACK LLP

6

7

                      By:  /s/ Martin A. Eliopulos

8                          MARTIN A. ELIOPULOS
                          Attorneys for Debtor-in-Possession

9                          TYCOON DEVELOPMENT
                          CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

3

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

# MOTION

## TO THE HONORABLE MARGARET MANN, JUDGE OF THE UNITED STATES BANKRUPTCY COURT:

TYCOON DEVELOPMENT CORPORATION ("Debtor"), debtor and debtor-in-possession herein, hereby moves this Court for an Order (i)  setting a hearing on *Emergency* Motion; and (ii) authorizing the use of cash collateral seeking relief pursuant to 11 U.S.C. §363 (the "Motion"), to use the cash collateral consisting of rents and any other income derived from the property located at 500 La Terraza Blvd., Escondido CA  92025 (the "500 La Terraza Property").

**A.     Motion Grounds**

Debtor's Motion and the Order sought is based upon the following grounds:

1.      Debtor is fee owners of the 500 La Terraza Property.  It is a class A 79,000 (approximate) square foot office building and is still owned by Debtor.  The property is presently 38 % occupied with 2 tenants under long term leases.  Debtor estimates the value of the 500 La Terraza Property to be approximately $13,500,000.

2.      The following information is provided to satisfy Bankruptcy Rule 4001(b)(1)(B)(i)-(iv).

3.      With respect to Rule 4001(b)(1)(B)(i), the only party with an interest in cash collateral with respect to the 500 La Terraza Property of which Debtor is aware is JP Morgan Chase Bank, NA ("Chase Bank") as successor in interest to Washington Mutual Bank.  Chase Bank has the following Deed of Trust against the 500 La Terraza Property:

(a)      A first priority Deed of Trust collateralizing an approximate $15,000,000 construction loan dated May 2, 2007 with an outstanding balance of approximately $12,776,000.

///
///
///
///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

(b)     There is a parking agreement between 24-Hour Fitness, Inc., tenant of 400 La Terraza Blvd, to utilize the back portion of parking lot at 500 La Terraza Property during the course of their lease during the hours of 5:30 pm and 7:00 am.  This parking is provided for in the 24 Hour Fitness, Inc. lease with Debtor and does not provide an additional income to Debtor.

(c)     Other than as disclosed above, Debtor is not aware of any other encumbrances or liens on this property.

4.     With respect to Rule 4001(b)(1)(B)(ii), the purpose for the use of the cash collateral is to pay the reasonable and necessary operating expenses for the 500 La Terraza Property.  In that regard, Debtor submits a budget showing the reasonable and necessary operating expense required to operate the property including insurance obligations, utilities, and maintenance of the 500 La Terraza Property.  *See* Declaration of Solomon Levy, **Exhibit "A"**.

5.     With respect to Rule 4001(b)(1)(B)(iii), the material terms including the duration and use of cash collateral are to pay the reasonable and necessary expenses for the 500 La Terraza Property as set forth in the proposed order as required by Bankruptcy Rule 4001(a) and attached to the Levy Declaration as **Exhibit "B"**.  The term will be on an interim basis retroactive to the Petition Date until the Bankruptcy Court can set a final hearing for the use of cash collateral.  Debtor offers a 12 month budget to provide the Court and creditors with an overview of business operations related to the 500 La Terraza Property over the next 4 months.

6.     With respect to Rule 4001(b)(1)(B)(iv), Debtor must provide a description of any cash payments or any other cash payments that will be provided to each entity with an interest in cash collateral (or an explanation as to why that entity is adequately protected[1]).  As set forth in the proposed budget, Debtor plans to use the rents generated from the 500 La Terraza Property to provide adequate protection payments to Chase Bank as follows:

---

[1] Debtors take the position that they need only pay interest on the First Deed of Trust Note to adequately protect Chase Bank's security interest.  Moreover, Debtor values the 500 La Terraza Property at $13,500,000 and further takes the position that Chase Bank is protected by an equity cushion of approximately 6%.

MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

(a)     Monthly payments of approximately $20,000 consisting of interest only payments according to the interest rate provided for in the First Deed of Trust note which is the 30 day Libor Rate plus one and one half percent adjusting monthly.

7.     The proposed budget also provides for a set aside of $2,500 per month for Bankruptcy Court approved administrative expenses of Debtor's professionals.

8.     Debtor requires the use of the rents generated by the 500 La Terraza Property to continue to operate the property.  Without the rents, Debtor cannot pay the reasonable and necessary operating expenses of the 500 La Terraza Property thereby risking the property to receivership and foreclosure.

9.     Debtor understands its obligation to keep cash collateral in a separate segregated account pursuant to Bankruptcy Code section 363(c)(4) and are in the process of setting up an account to account for rents in that fashion.  In that regard, Debtor can account for rents received post-petition and it is also requesting that the cash collateral request be approved retroactive to the Petition Date.

10.     Good cause exists for the Bankruptcy Court to authorize the Debtor to use the Cash Collateral derived from the 500 La Terraza Property because Debtor will use the Cash Collateral to pay only those expenses necessary to preserve and protect the 500 La Terraza Property thereby adequately protecting the secured property interests of any secured lender as required by Bankruptcy Code section 363.

This Motion is based upon the Notice of Motion, this Motion, the Memorandum of Points and Authorities and the Declaration of Solomon Levy in support thereof, the pleadings and files in the Debtor's bankruptcy case, and upon such further oral and documentary evidence as may be presented to the Court in support of the Motion.

///

///

///

///

HIGGS, FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

6

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

**B.    Prayer for Relief**

**WHEREFORE**, the Debtor prays for the following relief from the Bankruptcy Court:

1.    For a  hearing date for Debtor's emergency motion (and any other emergency motions to be filed by Debtor);

2.    For an order authorizing Debtor to use the Cash Collateral derived from the 500 La Terraza Property to pay the necessary and ongoing expenses of the 500 La Terraza Property for the period commencing retroactive back to Petition Date to and through December 1, 2010, or such other date as the Court may fix; and

3.    For such further and other relief as the Bankruptcy Court deems just and proper.

DATED:  August 13, 2010                         HIGGS, FLETCHER & MACK LLP


By: /s/ Martin A. Eliopulos
    MARTIN A. ELIOPULOS
    Attorneys for Debtor-in-Possession
    TYCOON DEVELOPMENT
    CORPORATION

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

7

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**C.    STATEMENT OF FACTS**

    **1.    Procedural Background**

    This case was commenced on August 11, 2010 (the "Petition Date"), when Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. No creditors' committee has been appointed.

    Pursuant to 28 U.S.C. §§1334 and 157, the Court has jurisdiction to hear this Motion. Pursuant to 28 U.S.C. §§157(b)(2)(A) and (O), the Motion presents a core proceeding. Authority to grant the relief requested is provided by 11 U.S.C. §361, 363 and 364.

    **2.    Factual Background**

        *a.    Need for Bankruptcy*

    Debtor was forced to file an emergency bar bones Chapter 11 bankruptcy case to stay appointment of a receiver to manage the 500 La Terraza Property and to otherwise stay nonjudicial foreclosure proceedings against the property .

    The First Deed of Trust note is a 36-month fully matured construction loan that was originally funded by Washington Mutual – Debtor's primary lender for take out of construction lending. The loan was structured to allow time to construct the building and allow reasonable lease up period. The funds were to be used for construction funding, to pay leasing commissions and tenant improvement allowance to build out interior suites. There was also funds available to fund interest payments during this 36-month period. Due to the downturn of the economy, tenants were hard to come by and the 24-month lease up period was up and the loan became due. Loan payments were made out of operating income when the interest reserve was depleted. Also because of the financial crisis in the country, permanent financing was not available to take out the construction loan. Matters were further complicated when Washington Mutual failed and was taken over by the Federal Deposit Insurance Corporation ("FDIC") and the loan was subsequently assigned to Chase Bank. Joint Venture opportunities required that Chase Bank reduce the principal amount of the loan. Debtor had no other option but to negotiate with current lender to

974352.1

8

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1  extend terms to allow a reasonable lease up period so that Debtor can meet refinancing

2  requirements of a new lender.

### b.    Debtor's Business

4  Debtor is a California S corporation formed under the laws of the State of California in

5  1998.  Its principal place of business is located in the Fenton Street Property in Chula Vista, CA

6  described below.  It purpose was and is to buy and develop commercial land.

### (1)    Solomon Levy

8  Debtor is 100% owned by Solomon Levy ("Mr. Levy") who is the president of Debtor.

9  Mr. Levy has 12 years of successfully developing land in San Diego County.  Mr. Levy handles

10  all business decisions for the Debtor.  Current decisions include negotiating a commercial lease

11  with a business tenant for the 500 La Terraza Property described below and reviewing and

12  approving a current Letter of Intent with another potential business tenant for the 500 La Terraza

13  Property.  Mr. Levy also reviews the accounting of al of the properties' operating expenses on a

14  monthly basis.  He co-designed with an architect buildings for both of the Carlsbad lots described

15  below as well as the 500 La Terraza Property.  Mr. Levy was heavily involved in the negotiation

16  and sale of 3 lots in Escondido over the past several years.  He is in the office nearly every day

17  and his current monthly withdrawal from Debtor is $20,000 to $35,000.

### (2)    Audrey Inskeep

19  Just prior to filing the Chapter 11 case, Audrey Inskeep ("Ms. Inskeep") was elected to the

20  position of CFO/Treasurer and Secretary of Debtor primarily due to her invaluable day to day

21  knowledge and understanding of Debtor's business operations and real property holdings.  Ms.

22  Inskeep was originally hired to work for Debtor as property manager to manage all properties in

23  Debtor's real estate portfolio. Ms. Inskeep is currently employed by Tycoon Management, LLC –

24  a separate entity not in bankruptcy.  Ms. Inskeep earns a gross monthly salary of $6,331.91 paid

25  by Tycoon Management, LLC.  She receives no compensation from Debtor.

26  ///

27  ///

28

Higgs, Fletcher
& Mack LLP
Attorneys At Law
San Diego

974352.1

9

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

### (3)  *Tycoon Management, LLC*

Mr. Levy formed Tycoon Management, LLC on February 10, 2007 ("Tycoon Management"), as a California limited liability corporation for the express purpose of acting a property manager to manage all properties in Debtor's real estate portfolio. Mr. Levy is the 100% owner and member of Tycoon Management. All tenants in properties owned by Debtor pay a monthly management fee to Tycoon Management and also utilize its management services. Tycoon Management currently earns an average of approximately $12,898 a month in management fees. Of this amount, approximately $4,000 is paid by Debtor for management of its properties.

### c.  *Debtor's Real Property Holdings*

In 1998, Debtor purchased land commonly known as 2320 Meyers Avenue, Escondido, CA. The land was developed into an approximate 50,000 square foot commercial building and sold in March 2000. During the same year, Debtor purchased land in Carlsbad, Escondido, and Chula Vista. As of the Petition Date, Debtor owns six different pieces of real property.

### (1)  *500 La Terraza Property*

The land purchased in Escondido totaled approximately 12.90 acres and contained 4 individual parcels. Debtor sold parcel 1, undeveloped, in 2004. Parcel 4, commonly known as 700 La Terraza Blvd., Escondido, CA 92025 was developed in 2004 into a 22,845 square foot class A office building. The building was 100% leased when it was sold in January 2006. At one point, parcel 3 was divided into two parcels and the smaller parcel, commonly known as 600 La Terraza Blvd., was sold, undeveloped, in 2006.

In 2007, Debtor developed the larger portion of parcel 3, commonly known as 500 La Terraza Blvd., Escondido, CA 92025. That property's development was completed in February 2008. It is a class A 79,000 (approximate) square foot office building and is still owned by Debtor.

///

///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

10

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1       The 500 La Terraza Property is currently approximately 38% occupied with 2 tenants as

2 follows:

3           (i) Wells Fargo Bank ("Wells") paying gross rent of $77,325.29 per month for

4 approximately 26,995 square feet.  There is approximately 90 months remaining on the

5 lease and the tenant is current on rent payments.

6           (ii) RBC Capital ("RBC") paying gross rent of $9,246.00 per month for

7 approximately 2,785 square feet.  There is approximately 36 months remaining on the

8 lease and the tenant is current on rent payments.

9       Debtor is in negotiations with at least two more tenants looking to lease approximately

10 17,730 square feet of the 48,587 remaining square feet available.  Debtor looks to generate

11 approximately $42,552 in additional gross monthly rents with these two new tenants.

12       The 500 La Terraza Property is presently encumbered with an apparent first priority deed

13 of trust in favor of JP Morgan Chase Bank, NA ("Chase Bank") securing repayment of an

14 approximate $12.776 Million commercial loan.  Debtor estimates the value of this property to be

15 approximately $13,500,000 based on an appraisal conducted by Chase Bank in December 2009.

16           *(2)*     ***400 La Terraza Property***

17       Development of parcel 2 otherwise known as 400 La Terraza Blvd., Escondido, CA

18 92025 ("400 La Terraza Property") began in 1999 and a 38,000 square foot commercial building

19 was erected and completed in late 2000.  The property is still owned by Debtor.

20       The 400 La Terraza Property is currently approximately 100% occupied with one tenant

21 as follows:

22           (i) 24 Hour Fitness, Inc. ("24 Hour Fitness") paying rent of $64,661.03 per month

23           triple net for approximately 38,121 square feet.  There is approximately 132 months

24           remaining on the lease and the tenant is current on rent payments.

25 ///

26 ///

27 ///

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

11

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

The 400 La Terraza Property is presently encumbered with an apparent first priority deed of trust in favor of San Diego County Credit Union ("SDCCU") securing repayment of an approximate $6.934 Million commercial loan.  Debtor estimates the value of this property to be approximately $8,375,000 based upon a recent offer to purchase the property received on July 19, 2010.

### (3)     *Fenton St. Property*

In the new EastLake community of Chula Vista, Debtor bought lot 21 and constructed a 38,000 square foot commercial building, commonly known as 2371 Fenton Street, Chula Vista, CA  91914 (the "Fenton Street Property").  Construction of the Fenton Street Property was completed in 2000.  Debtor still owns the property.

The Fenton Street Property is currently approximately 21.04% occupied with two  tenants as follows:

(i)     Sunrise Jewelry Manufacturing Corp. ("Sunrise") paying rent of $12,000 per month net (tenant pays increases for taxes and insurance) for approximately 7287 square feet.  There is approximately 52 months remaining on the lease and the tenant is current on rent payments.  Sunrise is a California S Corporation 100% owned by Mr. Levy.

(ii)     Tycoon Management, LLC ("Tycoon Management") paying rent of $2,430 per month net for approximately 972 square feet.  There is approximately 52 months remaining on the lease and the tenant has August rent still outstanding as of August 13, 2010.  This rent is typically paid around the 15th of the month and after all management fees are collected and is expected to be paid on time.  Tycoon Management is a single member California LLC owned 100% by Mr. Levy.

The balance of the space in the Fenton Street property is a converted manufacturing facility that is not an office building with the approximate one million dollar conversion taking place in 2006.

HIGGS, FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

12

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1    The Fenton Street Property is presently encumbered with an apparent first priority deed of

2  trust in favor of Wells Fargo Bank ("Wells Fargo") securing repayment of an approximate

3  $3,349,000 commercial loan.  Debtor estimates the value of this property to be approximately

4  $3,450,000 based upon an appraisal conducted by Wells Fargo..

5    *(4)    El Camino Property*

6    In 1998, Debtor acquired undeveloped real property located at El Camino Terrace in

7  Carlsbad, CA  92008 (the "El Camino Property").  The El Camino Property is unencumbered and

8  remains undeveloped.  Debtor estimates the value of the El Camino Property to be approximately

9  $700,000.

10    *(5)    Valley View Property*

11    In 1998, Debtor acquired undeveloped real property located at Valley View in Carlsbad,

12  CA  92008 (the "Valley View Property").  The Valley View Property is unencumbered and

13  remains undeveloped.  Debtor estimates the value of the Valley View Property to be

14  approximately $0.  This valuation is based upon environmental restrictions and other

15  complications that will be confronted to develop the property.

16    *(6)    Hesperia Property*

17    The only real estate purchase after 1998 was undeveloped land located in Hesperia, CA

18  92345 (the "Hesperia Property").  The Hesperia Property is unencumbered and remains

19  undeveloped.  Debtor estimates the value of the Hesperia Property to be approximately $250,000

20  based on comparable land sales in the area.

21    *d.    Income and Expenses for the 500 La Terraza Property*

22    *(1)    Income*

23    The 500 La Terraza Property generates approximately $86,570 in rents from the above

24  tenants.  *See* the Budget attached to the Declaration of Mr. Levy as Exhibit "A".

25  ///

26  ///

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

13

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1  (2)  *Expenses*

2      The 500 La Terraza Property has an expense base that ranges, depending on the month,

3  from a low of $14,700 (in May of 2010) to a high of $106,400 (in December 2010 when property

4  taxes are due) and overall estimated expenses of $373,300 for the year.  That leaves net ordinary

5  income ranging from a low of (-$19,800) (in December 2010 when property taxes are paid) to a

6  high of $71,500 (in May of 2010) and overall estimated net ordinary income of $660,514 for the

7  year.  The net ordinary income is available to pay debt service to the Chase Note, a salary of

8  $12,000 to Mr. Levy and a set aside for court approved administrative expenses of $2,500 per

9  month.  *See* Levy Dec., Ex. "A".

10      **3.**  **The Need to Use Cash Collateral**

11      Debtor requires the use of the Cash Collateral to maintain and preserve the 500 La Terraza

12  Property.  The use of Cash Collateral to pay the necessary and essential expenses of operations

13  and maintenance is in the best interest of the estate and its creditors, in that it will preserve and

14  improve the value of the income stream constituting Cash Collateral and the value of the 500 La

15  Terraza Property, for the benefit of any secured lender, the Debtor's estate and its creditors.

16      The Debtors propose to use the Cash Collateral consisting of collected rents and any other

17  proceeds from the 500 La Terraza Property only in an amount necessary to pay for the actual and

18  necessary costs and expenses for the maintenance and preservation of the 500 La Terraza

19  Property, including Debtor's post-petition debt service obligations to any secured lender,

20  insurance obligations, utilities and maintenance of the 500 La Terraza Property.  Debtor has

21  opened a separate bank account for the purpose of collecting rents generated from the 500 La

22  Terraza Property.

23  **D.**  **STATEMENT OF LAW**

24      The Court's authorization for use of cash collateral must adequately protect the creditors

25  interest in the collateral.  *In re Sunnymead Shopping Center Co.*, 178 B.R. 809, 814 (9th Cir. BAP

26  1995).  The Court must determine the value of the secured creditor's interest in the collateral and

27  whether the proposed use cash collateral threatens that value.  *In re George Ruggiere Chrysler-*

28  *Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

14

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

While it is generally true that under Bankruptcy law post-petition rents subject to a recorded collateral assignment are subject to the creditor's lien in bankruptcy, *see, e.g. In re Scottsdale Medical Pavilion*, 159 B.R. 295, 300-01 (9th Cir. BAP 1993), aff'd 52 F.3d 244 (9th Cir,) 1995), only that portion of gross rent that remains after paying normal operation expenses can truly be considered "cash collateral." *See, e.g. In re Ambanc La Mesa Ltd. Partnership*, 115 F.3d 650, 652 (9th Cir. 1997) (in plan confirmation context, appellate court found bankruptcy court erred in valuing collateral when it failed to "include cash collateral, the sum of rents accumulated less operating expenses at the time of confirmation of the Plan in the present value securing" the claim). This conclusion comports with simple logic in that if the Debtor's lenders directly controlled the assets of the Debtor, those creditors would only recover and apply to their claims that portion of the rent, the amount, if any, which exceed the costs to operate the property secured by cash collateral.

In the present case, the Debtor has proposed to use cash collateral only for those expenses necessary to preserve and protect the value of the 500 La Terraza Property. Specifically, the Debtor will use the Cash Collateral only to the extent necessary to pay the actual, reasonable and necessary operating expenses relating to the 500 La Terraza Property. Debtor is in the process of setting up a separate bank account for the purpose of collecting rents generated by the 500 La Terraza Property. The Debtor further proposes to provide all monthly operating reports that are provided to the Office of the United States Trustee, and any other reports reasonably requested, to any secured lender. These procedures provide the appropriate level of adequate protection for the secured lender's interest in the cash collateral generated by the 500 La Terraza Property The Debtors submit that the use of Cash Collateral for the purposes described herein provides adequate protection for the interest of any secured lender and in any diminution of such Cash Collateral.

///

///

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

15

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1

**E.    CONCLUSION**

2      Based upon the above reasons, the Debtor respectfully requests that the Court authorize

3   the relief requested in the Debtor's motion.

4

5   DATED:  August 13, 2010                 HIGGS, FLETCHER & MACK LLP

6

7                                          By:  /s/ Martin A. Eliopulos

8                                               MARTIN A. ELIOPULOS
                                                Attorneys for Debtor-in-Possession
9                                               TYCOON DEVELOPMENT
                                                CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1                              16          MOTION FOR AN ORDER AUTHORIZING
                                                  THE USE OF CASH COLLATERAL
                                                  CASE NO. 10-14277-MM11

### DECLARATION OF SOLOMON LEVY

I, SOLOMON LEVY, declare and state as follows:

1.      I am an individual residing in San Diego County.  I am also the President of Tycoon Development Corporation, the debtor and debtor-in-possession in the above-captioned matter.  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      This case was commenced on August 11, 2010 (the "Petition Date"), when Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  No creditors' committee has been appointed.

3.      Debtor was forced to file an emergency bare bones Chapter 11 bankruptcy case to stay appointment of a receiver to manage the 500 La Terraza Property and to otherwise stay nonjudicial foreclosure proceedings against the property .

4.      The First Deed of Trust note is a 36-month fully matured construction loan that was originally funded by Washington Mutual – Debtor's primary lender for take out of construction lending.  The loan was structured to allow time to construct the building and allow reasonable lease up period.  The funds were to be used for construction funding, to pay leasing commissions and tenant improvement allowance to build out interior suites.  There was also funds available to fund interest payments during this 36-month period.  Due to the downturn of the economy, tenants were hard to come by and the 24-month lease up period was up and the loan became due.  Loan payments were made out of operating income when the interest reserve was depleted.  Also because of the financial crisis in the country, permanent financing was not available to take out the construction loan.  Matters were further complicated when Washington Mutual failed and was taken over by the Federal Deposit Insurance Corporation ("FDIC") and the loan was subsequently assigned to Chase Bank.  Joint Venture opportunities required that Chase Bank reduce the principal amount of the loan.  Debtor had no other option but to negotiate with current lender to extend terms to allow a reasonable lease up period so that Debtor can meet refinancing requirements of a new lender.

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

17

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

5.      Debtor is a California S corporation formed under the laws of the State of California in 1998.  Its principal place of business is located in the Fenton Street Property in Chula Vista, CA described below.  It purpose was and is to buy and develop commercial land.

6.      Debtor is 100% owned by Solomon Levy ("Mr. Levy") who is the president of Debtor.  Mr. Levy has 12 years of successfully developing land in San Diego County.  Mr. Levy handles all business decisions for the Debtor.  Current decisions include negotiating a commercial lease with a business tenant for the 500 La Terraza Property described below and reviewing and approving a current Letter of Intent with another potential business tenant for the 500 La Terraza Property.  Mr. Levy also reviews the accounting of al of the properties' operating expenses on a monthly basis.  He co-designed with an architect buildings for both of the Carlsbad lots described below as well as 500 La Terraza Property.  Mr. Levy was heavily involved in the negotiation and sale of 3 lots in Escondido over the past several years.  He is in the office nearly every day and his current monthly withdrawal from Debtor is $20,000 to $35,000.

7.      Just prior to filing the Chapter 11 case, Audrey Inskeep ("Ms. Inskeep") was elected to the position of CFO/Treasurer and Secretary of Debtor primarily due to her invaluable day to day knowledge and understanding of Debtor's business operations and real property holdings. Ms. Inskeep was originally hired to work for Debtor as property manager to manage all properties in Debtor's real estate portfolio. Ms. Inskeep is currently employed by Tycoon Management, LLC – a separate entity not  in bankruptcy.  Ms. Inskeep earns a gross monthly salary of $6,331.91 paid by Tycoon Management, LLC.  She receives no compensation from Debtor.

8.      Mr. Levy formed Tycoon Management, LLC on February 10, 2007 ("Tycoon Management"), as a California limited liability corporation for the express purpose of acting a property manager to manage all properties in Debtor's real estate portfolio.  Mr. Levy is the 100% owner and member of Tycoon Management.  All tenants in properties owned by  Debtor pay a monthly management fee to Tycoon Management and also utilize its management services. Tycoon Management currently earns an average of approximately $12,898 a month in management fees.  Of this amount, approximately $4,000 is paid by Debtor for management of its

1   properties.

2       9.      In 1998, Debtor purchased land commonly known as 2320 Meyers Avenue,

3   Escondido, CA. The land was developed into an approximate 50,000 square foot commercial

4   building and sold in March 2000. During the same year, Debtor purchased land in Carlsbad,

5   Escondido, and Chula Vista. As of the Petition Date, Debtor owns six different pieces of real

6   property.

7       10.     The land purchased in Escondido totaled approximately 12.90 acres and contained

8   4 individual parcels. Debtor sold parcel 1, undeveloped, in 2004. Parcel 4, commonly known as

9   700 La Terraza Blvd., Escondido, CA 92025 was developed in 2004 into a 22,845 square foot

10  class A office building. The building was 100% leased when it was sold in January 2006. At one

11  point, parcel 3 was divided into two parcels and the smaller parcel, commonly known as 600 La

12  Terraza Blvd., was sold, undeveloped, in 2006.

13      11.     In 2007, Debtor developed the larger portion of parcel 3, commonly known as 500

14  La Terraza Blvd., Escondido, CA 92025. That property's development was completed in

15  February 2008. It is a class A 79,000 (approximate) square foot office building and is still owned

16  by Debtor.

17      12.     The 500 La Terraza Property is currently approximately 38% occupied with 2

18  tenants as follows:

19              (a) Wells Fargo Bank ("Wells") paying gross rent of $77,325.29 per month for

20      approximately 26,995 square feet. There is approximately 90 months remaining on the

21      lease and the tenant is current on rent payments.

22              (b) RBC Capital ("RBC") paying gross rent of $9,246.00 per month for

23      approximately 2,785 square feet. There is approximately 36 months remaining on the

24      lease and the tenant is current on rent payments.

25      13.     Debtor is in negotiations with at least two more tenants looking to lease

26  approximately 17,730 square feet of the 48,587 remaining square feet available. Debtor looks to

27  generate approximately $42,552 in additional gross monthly rents with these two new tenants.

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1                                    19          MOTION FOR AN ORDER AUTHORIZING
                                                        THE USE OF CASH COLLATERAL
                                                        CASE NO. 10-14277-MM11

14.     The 500 La Terraza Property is presently encumbered with an apparent first priority deed of trust in favor of JP Morgan Chase Bank, NA ("Chase Bank") securing repayment of an approximate $12.776 Million commercial loan.  Debtor estimates the value of this property to be approximately $13,500,000 based on an appraisal conducted by Chase Bank in December 2009.

15.     Development of parcel 2 otherwise known as 400 La Terraza Blvd., Escondido, CA  92025 ("400 La Terraza Property") began in 1999 and a 38,000 square foot commercial building was erected and completed in late 2000.  The property is still owned by Debtor.

16.     The 400 La Terraza Property is currently approximately 100% occupied with one tenant as follows:

(a) 24 Hour Fitness, Inc. ("24 Hour Fitness") paying rent of $64,661.03 per month triple net for approximately 38,121 square feet.  There is approximately 132 months remaining on the lease and the tenant is current on rent payments.

17.     The 400 La Terraza Property is presently encumbered with an apparent first priority deed of trust in favor of San Diego County Credit Union ("SDCCU") securing repayment of an approximate $6.934 Million commercial loan.  Debtor estimates the value of this property to be approximately $8,375,000 based upon a recent offer to purchase the property received on July 19, 2010.

18.     In the new EastLake community of Chula Vista, Debtor bought lot 21 and constructed a 38,000 square foot commercial building, commonly known as 2371 Fenton Street, Chula Vista, CA  91914 (the "Fenton Street Property").  Construction of the Fenton Street Property was completed in 2000.  Debtor still owns the property.

19.     The Fenton Street Property is currently approximately 21.04% occupied with two tenants as follows:

(a)     Sunrise Jewelry Manufacturing Corp. ("Sunrise") paying rent of $12,000 per month net (tenant pays increases for taxes and insurance) for approximately 7287 square feet.  There is approximately 52 months remaining on the lease and the tenant is

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

20

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1   current on rent payments.  Sunrise is a California S Corporation 100% owned by Mr.

2   Levy.

3           (b)      Tycoon Management, LLC ("Tycoon Management") paying rent of $2,430

4   per month net for approximately 972 square feet.  There is approximately 52 months

5   remaining on the lease and the tenant has August rent still outstanding as of August 13,

6   2010.  This rent is typically paid around the 15th of the month and after all management

7   fees are collected and is expected to be paid on time.  Tycoon Management is a single

8   member California LLC owned 100% by Mr. Levy.

9        20.     The balance of the space in the Fenton Street property is a converted

10  manufacturing facility that is not an office building with the approximate one million dollar

11  conversion taking place in 2006.

12       21.     The Fenton Street Property is presently encumbered with an apparent first priority

13  deed of trust in favor of Wells Fargo Bank ("Wells Fargo") securing repayment of an

14  approximate $3,349,000 commercial loan.  Debtor estimates the value of this property to be

15  approximately $3,450,000 based upon an appraisal conducted by Wells Fargo.

16       22.     In 1998, Debtor acquired undeveloped real property located at El Camino Terrace

17  in Carlsbad, CA  92008 (the "El Camino Property").  The El Camino Property is unencumbered

18  and remains undeveloped.  Debtor estimates the value of the El Camino Property to be

19  approximately $700,000.

20       23.     In 1998, Debtor acquired undeveloped real property located at Valley View in

21  Carlsbad, CA  92008 (the "Valley View Property").  The Valley View Property is unencumbered

22  and remains undeveloped.  Debtor estimates the value of the Valley View Property to be

23  approximately $0.  This valuation is based upon environmental restrictions and other

24  complications that will be confronted to develop the property.

25       24.     The only real estate purchase after 1998 was undeveloped land located in

26  Hesperia, CA  92345 (the "Hesperia Property").  The Hesperia Property is unencumbered and

27  remains undeveloped.  Debtor estimates the value of the Hesperia Property to be approximately

28  $250,000 based on comparable land sales in the area.

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1                                              21                    MOTION FOR AN ORDER AUTHORIZING
                                                                           THE USE OF CASH COLLATERAL
                                                                           CASE NO. 10-14277-MM11

25.    The 500 La Terraza Property generates approximately $86,570 in rents from the above tenants.  *See* the Budget attached hereto as **Exhibit "A"**.

26.    The 500 La Terraza Property has an expense base that ranges, depending on the month, from a low of $14,700 (in May of 2010) to a high of $106,400 (in December 2010 when property taxes are due) and overall estimated expenses of $373,300 for the year.  That leaves net ordinary income ranging from a low of (-$19,800) (in December 2010 when property taxes are paid) to a high of $71,500 (in May of 2010) and overall estimated net ordinary income of $660,514 for the year.  The net ordinary income is available to pay debt service to the Chase Note, a salary of $12,000 to Mr. Levy and a set aside for court approved administrative expenses of $2,500 per month.  *See* Ex. "A".

27.    Debtor requires the use of the Cash Collateral to maintain and preserve the 500 La Terraza Property.  The use of Cash Collateral to pay the necessary and essential expenses of operations and maintenance is in the best interest of the estate and its creditors, in that it will preserve and improve the value of the income stream constituting Cash Collateral and the value of the 500 La Terraza Property, for the benefit of any secured lender, the Debtor's estate and its creditors.

28.    The Debtor proposes to use the Cash Collateral consisting of collected rents and any other proceeds from the 500 La Terraza Property only in an amount necessary to pay for the actual and necessary costs and expenses for the maintenance and preservation of the 500 La Terraza Property, including Debtor's post-petition debt service obligations to any secured lender, insurance obligations, utilities and maintenance of the 500 La Terraza Property.  Debtor has opened a separate bank account for the purpose of collecting rents generated from the 500 La Terraza Property.

///

///

///

///

///

HIGGS, FLETCHER & MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

22

MOTION FOR AN ORDER AUTHORIZING THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

1    29.    A proposed order regarding authorization to use cash collateral is attached hereto

2 as **Exhibit "B"**.

3    I declare under penalty of perjury under the laws of the State of California, that the

4 foregoing is true and correct.  Executed this 13th day of August, 2010, at San Diego, CA .

5

6    SOLOMON LEVY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS, FLETCHER
& MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

974352.1

23

MOTION FOR AN ORDER AUTHORIZING
THE USE OF CASH COLLATERAL
CASE NO. 10-14277-MM11

# EXHIBIT A

| | Jan 10 | Feb 10 | Mar 10 | Apr 10 | May 10 | Jun 10 | Jul 10 | Aug 10 | Sep 10 | Oct 10 | Nov 10 | Dec 10 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| Reimbursed Expenses | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 1,632.36 |
| RENT INCOME | 84,012.95 | 84,012.95 | 86,265.14 | 86,265.14 | 86,265.14 | 86,265.14 | 86,265.14 | 86,570.49 | 86,570.49 | 86,570.49 | 86,570.49 | 86,570.49 | 1,032,204.05 |
| **Total Income** | 84,148.98 | 84,148.98 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 1,033,836.41 |
| **Gross Profit** | 84,148.98 | 84,148.98 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 1,033,836.41 |
| **Expense** | | | | | | | | | | | | | |
| Association Dues | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 14,868.00 |
| BANK CHARGES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Elevator Service | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,391.64 | 0.00 | 0.00 | 0.00 | 0.00 | 7,776.64 |
| Fire and Safety | 0.00 | 0.00 | 140.00 | 0.00 | 0.00 | 140.00 | 0.00 | 175.00 | 140.00 | 175.00 | 0.00 | 315.00 | 1,085.00 |
| Gas and Electric | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 34,200.00 |
| HVAC Maintenance/Repairs | 162.00 | 162.00 | 1,356.00 | 162.00 | 162.00 | 162.00 | 162.00 | 162.00 | 1,356.00 | 162.00 | 162.00 | 162.00 | 4,332.00 |
| Insurance | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 11,190.60 |
| JANITORIAL | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,800.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 39,050.00 |
| Landscaping | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,439.33 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 12,989.33 |
| Management Fee | 3,360.52 | 3,360.52 | 3,450.61 | 3,450.61 | 3,450.61 | 3,450.61 | 3,450.61 | 3,462.82 | 3,462.82 | 3,462.82 | 3,462.82 | 3,462.82 | 41,288.16 |
| PEST CONTROL | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 1,056.00 |
| PHONE/CABLE | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 3,120.00 |
| Plant Service | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 335.75 | 335.75 | 140.00 | 335.75 | 2,854.50 |
| PROPERTY TAXES | 0.00 | 0.00 | 0.00 | 89,630.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91,000.00 | 180,630.68 |
| Building Repairs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Trash | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 4,481.52 |
| Water | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 12,600.00 |
| Window Cleaning | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,800.00 | 0.00 | 0.00 | 0.00 | 1,800.00 |
| **Total Expense** | 15,040.53 | 14,851.28 | 16,079.62 | 104,572.05 | 14,745.62 | 15,081.37 | 14,745.62 | 23,559.55 | 18,041.83 | 15,278.58 | 14,907.83 | 106,418.58 | 373,322.43 |
| **Net Ordinary Income** | 69,108.45 | 69,297.70 | 70,321.55 | -18,170.88 | 71,655.55 | 71,319.80 | 71,655.55 | 63,146.97 | 68,664.69 | 71,427.94 | 71,798.69 | -19,712.06 | 660,513.98 |
| **Other Expenses** | | | | | | | | | | | | | |
| Administrative Fee | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| Salary | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 144,000.00 |
| Debt Service | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 240,000.00 |
| **Net Income** | 46,608.45 | 46,797.70 | 47,821.55 | -40,670.88 | 49,155.55 | 48,819.80 | 49,155.55 | 40,646.97 | 46,164.69 | 48,927.94 | 49,298.69 | -42,212.06 | 390,513.98 |

# EXHIBIT B

CSD 1001A [11/15/04]
Name, Address, Telephone No. & I.D. No.
Martin A. Eliopulos, Esq. (SBN: 149299)
Higgs, Fletcher & Mack LLP
401 West A Street, Ste. 2600
San Diego, CA  92101

619.236.1551

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California  92101-6991

In Re  Tycoon Development Corporation

                                                              Debtor.

BANKRUPTCY NO.
10-14277-MM11
Date of Hearing: EX PARTE
Time of Hearing: EX PARTE
Name of Judge: Hon. Margaret Man

## ORDER ON EMERGENCY MOTION RE SETTING HEARING
ON EMERGENCY MOTION, AUTHORIZING USE OF CASH COLLATERAL RE 500 LA TERRAZA

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through  4        with exhibits, if any, for a total of  6         pages, is granted. Motion/Application Docket Entry No. _____

//

//

//

//

//

//

DRAFT

DATED:

_____
Judge, United States Bankruptcy Court
Hon. Margaret Mann

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Higgs, Fletcher & Mack LLP
(Firm name)

By:   /S/ Martin A. Eliopulos
Attorney for [ X ] Movant [ ] Respondent
Tycoon Development Corporation

CSD 1001A                                                                                           CSD-1001

CSD 1001A [11/15/04] (Page 2)
ORDER ON    *[PROPOSED]* RE INTERIM USE OF CASH COLLATERAL (BALBOA)
DEBTOR:    **Tycoon Development Corporation**    CASE NO:    **10-14277-MM11**

Upon consideration of the Emergency Motion ("Motion") of the debtor and debtor in possession in the above-captioned Chapter 11 case ("Debtor") seeking an order under sections 361, 363(c), 363(e) of Title 11 of the United States Code, 11 U.S.C. §101-1330 (as amended, the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing use of Cash Collateral derived from that certain real property located at **500 La Terraza Blvd., Escondido CA 92025 (the "500 La Terraza Property")**, and upon the Declaration of Solomon Levy, the Court makes the following findings of fact and conclusions of law:

A.    The Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. section 1334;

B.    This is a core proceeding pursuant to 28 U.S.C. §157(b)(2);

C.    Adequate and sufficient notice of the Motion and interim hearing has been provided to all persons entitled thereto and no further notice of the Motion is necessary;

D.    The relief requested in the Motion is in the best interest of the Debtor's estate, its creditors and other parties in interest in that in exchange for providing adequate protection to Chase Bank (the "Secured Lender") as set forth below Debtor is authorized to utilize Cash Collateral derived from the 500 La Terraza Property under the terms and conditions set forth herein;

E.    The Secured Lender asserts that certain prepetition obligations were, as of the Petition Date, secured by a valid, enforceable and properly perfected lien(s) on and a security interest(s) in the 500 La Terraza Property and rents derived therefrom which rents constitute cash collateral within the meaning of section 363(a) of the Bankruptcy Code ("Cash Collateral");

F.    Debtor has requested the Court authorize Debtor's' interim use of Cash Collateral for the purposes set forth in the interim budget attached hereto as **Exhibit "A"** (the "Interim Budget") hereto.

G.    Subject to compliance with the conditions of this Interim Order, Debtors are permitted to use the Cash Collateral during the period, and in the amounts, set forth in the Interim Budget and only for the purposes set forth therein; and

H.    This Interim Order is entered pursuant to, and shall be construed and be consistent with sections 361 and 363 of the Bankruptcy Code and Federal Bankruptcy Rule 4001(b)(2).

Based upon the forgoing, the record herein and after due deliberation and good cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is **GRANTED** as set forth following;

2.    Pending final hearing on Debtor's use of Cash Collateral, Debtor shall be, and hereby is, authorized to use Cash Collateral on the terms and conditions set forth in this Interim Order.

    (a)    Debtor is authorized to use Cash Collateral for the purposes set forth in the Interim Budget attached as Exhibit "A" provided that, in any one month, the Cash Collateral used does not exceed the total of the allowed expenses for that month (excluding Adequate Protection payments) in the Renew Budget by more than twenty percent (20%) in any one calendar month, unless consented to by Secured Creditor or approved by the Court..



969376.2

CSD 1001A [11/15/04] (Page 3)
ORDER ON   *[PROPOSED]* RE INTERIM USE OF CASH COLLATERAL (BALBOA)
DEBTOR:   **Tycoon Development Corporation**                                    CASE NO:   **10-14277-MM11**

(b)    Within five (5) business days of the entry of this Order, Debtors shall provide to Secured Lender a report showing as of the date of the filing of this Order (i) the rents received since the filing of the petition in this action; (ii) the expenditures of cash collateral made since the filing of the petition in this action; and (iii) the balance in the segregated account described in ¶5 of this Order.

(c)    Starting on August 20, 2010, and on the 20th day of each month thereafter, Debtors shall provide to Secured Lender the following information:  (i) the rents received during the preceding month and the total rents received since the filing of the petition in this action; (ii) for each budget line item, the total expenditures made in the preceding month and since the filing of the petition in this action; (iii) the amount balance, as of the previous business day, in the segregated account described in ¶5 of this Order.

3.    Authorization for use of Cash Collateral is retroactive to the Petition Date.

4.    Pending final hearing on Debtor's use of Cash Collateral, Debtor shall adequately protect Secured Lender's interest by making the following adequate protection payments:

(a)    On the Secured Lender's loan secured by a first priority Deed of Trust against the 500 La Terraza Property, Debtor shall pay adequate protection payments of $_____ per month commencing with the payment due for September, 2010, and each monthly payment thereafter which shall be paid no later than the twelfth (12th) day of the month; and

In addition, Secured Lender is granted (i) a replacement lien on all collateral described in any validly perfected security interest in favor of Secured Lender and (ii) a priority administrative claim for any rent which is not used or properly segregated pursuant to this Order.  Debtor reserves all rights to challenge the validity of any security interest asserted by the Secured Lender.

5.    Pending final hearing on Debtor's use of Cash Collateral, Debtor shall segregate and set aside in a separate account any rents over and above the authorized expenses set forth in the Interim Budget plus the debt service to the Secured Lender provided for in the preceding paragraph.

6.    Notwithstanding Federal Bankruptcy Rule 7062, the terms and conditions of this Interim Order shall:

(a)    be immediately enforceable pursuant to Federal Bankruptcy Rule 8005;

(b)    not be stayed absent:

(i)    an application by a party in interest for such stay in conformance with Federal Bankruptcy Rule 8005; and

(ii)    a hearing upon notice to Debtor.

7.    The Hearing to consider entry of a further Interim/Final Order authorizing and approving use of Cash Collateral is hereby scheduled to take place on _____, **2010, at \_\_:\_\_ \_\_.m.** in Department 1 of the above-referenced Court.

8.    Debtor's motion for a further Interim/Final Order authorizing the use of Cash Collateral form the 500 La Terraza Property is hereby deemed filed and served.  Debtor shall forthwith serve by first class United States Mail upon the appropriate secured lender(s), the United States Trustee, Debtor's twenty (20) largest creditors as determined in accordance with Federal Bankruptcy Rule 1007(d) and any party having filed a request to receive service in Debtor's Chapter 11 case;

(a)    a copy of this Interim Order; and



969376.2

CSD 1001A [11/15/04] (Page 4)
ORDER ON    *[PROPOSED]* RE INTERIM USE OF CASH COLLATERAL (BALBOA)
DEBTOR:    **Tycoon Development Corporation**                    CASE NO:    **10-14277-MM11**

 (b) a form Notice of Hearing and Motion (Form CSD 1183) notifying of a further hearing to determine whether a further Interim/Final Order authorizing the use of Cash Collateral should issue which notice attaches the proposed Interim Budget for a defined period beyond that period of the Interim Order and Interim Budget.

9. Debtor may supplement their Motion and Secured Lender may supplement its opposition to the Motion by filing and serving supplemental pleadings via facsimile and/or e-mail no later than _____, __, **2010**.

10. Any other opposition and/or reply shall be filed pursuant to Local Bankruptcy Ruler 9013-4 and 9013-5, respectively.

11. The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.



969376.2

# EXHIBIT A

DRAFT

| | Jan 10 | Feb 10 | Mar 10 | Apr 10 | May 10 | Jun 10 | Jul 10 | Aug 10 | Sep 10 | Oct 10 | Nov 10 | Dec 10 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | | | | | | | | |
| **Income** | | | | | | | | | | | | | |
| Reimbursed Expenses | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 136.03 | 1,632.36 |
| RENT INCOME | 84,012.95 | 84,012.95 | 86,265.14 | 86,265.14 | 86,265.14 | 86,265.14 | 86,265.14 | 86,570.49 | 86,570.49 | 86,570.49 | 86,570.49 | 86,570.49 | 1,032,204.05 |
| **Total Income** | 84,148.98 | 84,148.98 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 1,033,836.41 |
| **Gross Profit** | 84,148.98 | 84,148.98 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,401.17 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 86,706.52 | 1,033,836.41 |
| **Expense** | | | | | | | | | | | | | |
| Association Dues | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 1,239.00 | 14,868.00 |
| BANK CHARGES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Elevator Service | 385.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7,391.64 | 0.00 | 0.00 | 0.00 | 0.00 | 7,776.64 |
| Fire and Safety | 0.00 | 0.00 | 140.00 | 0.00 | 0.00 | 140.00 | 0.00 | 175.00 | 140.00 | 175.00 | 0.00 | 315.00 | 1,085.00 |
| Gas and Electric | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 2,850.00 | 34,200.00 |
| HVAC Maintenance/Repairs | 162.00 | 162.00 | 1,356.00 | 162.00 | 162.00 | 162.00 | 162.00 | 162.00 | 1,356.00 | 162.00 | 162.00 | 162.00 | 4,332.00 |
| Insurance | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 932.55 | 11,190.60 |
| JANITORIAL | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,800.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 39,050.00 |
| Landscaping | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,439.33 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 12,989.33 |
| Management Fee | 3,360.52 | 3,360.52 | 3,450.61 | 3,450.61 | 3,450.61 | 3,450.61 | 3,450.61 | 3,462.82 | 3,462.82 | 3,462.82 | 3,462.82 | 3,462.82 | 41,288.16 |
| PEST CONTROL | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 88.00 | 1,056.00 |
| PHONE/CABLE | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 260.00 | 3,120.00 |
| Plant Service | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 140.00 | 335.75 | 2,854.50 |
| PROPERTY TAXES | 0.00 | 0.00 | 0.00 | 89,630.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91,000.00 | 180,630.68 |
| Building Repairs | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Trash | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 373.46 | 4,481.52 |
| Water | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 1,050.00 | 12,600.00 |
| Window Cleaning | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,800.00 | 0.00 | 0.00 | 0.00 | 1,800.00 |
| **Total Expense** | 15,040.53 | 14,851.28 | 16,079.62 | 104,572.05 | 14,745.62 | 15,081.37 | 14,745.62 | 23,559.55 | 18,041.83 | 15,278.64 | 14,907.83 | 106,418.58 | 373,322.43 |
| **Net Ordinary Income** | 69,108.45 | 69,297.70 | 70,321.55 | -18,170.88 | 71,655.55 | 71,319.80 | 71,655.55 | 63,146.97 | 68,664.69 | 71,427.94 | 71,798.69 | -19,712.06 | 660,513.98 |
| **Other Expenses** | | | | | | | | | | | | | |
| Administrative Fee | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 30,000.00 |
| Salary | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 144,000.00 |
| Debt Service | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 240,000.00 |
| **Net Income** | 46,608.45 | 46,797.70 | 47,821.55 | -40,670.88 | 49,155.55 | 48,819.80 | 49,155.55 | 40,646.97 | 46,164.69 | 48,927.94 | 49,298.69 | -42,212.06 | 390,513.98 |

DRAFT